MRS. Z. E. HALL et al. v. W. J. McCANDLESS.

Eastern Section. June 27, 1931.

Petition for Certiorari denied by Supreme Court, March 5, 1932.

Cox, Taylor & Epps, of Johnson City, for appellant.
Burrow & Burrow, of Bristol, for appellees.

PORTRUM, J. This is a replevin suit to recover an automobile, pledged by the husband to a professional gambler, under a written contract to secure $200, evidenced by a check, cashed by the gambler, and drawn by a person living in Elizabethton, Tennessee. The check was turned down when presented for payment for the reason that the holder, Hall, had no right to cash the check. It seems the check had been given as a duplicate for a lost check, when the

original was not lost but had been negotiated and later cashed. The maker thought the duplicate had passed into the hands of an innocent holder and he had been defrauded by the act of Hall in negotiating it; therefore, he instituted a criminal prosecution against Hall for obtaining money under false pretenses. This criminal charge was made in Carter County, and Hall was taken there and placed in jail, where he was unable to make bond. McCanless, the gambler, went from his gambling house in Johnson City to Elizabethton and there entered into a contract with Hall, under the terms of which Hall was to pledge his Reo automobile with McCanless, which was to be returned within a specified time upon the payment by Hall of the sum represented by the check, namely, $200, and the costs of the criminal prosecution which McCanless agreed to pay for Hall, in order that the criminal charge would be dismissed. After the execution of this contract and the delivery of the car to McCanless the check was destroyed, and the costs was paid and the prosecution dismissed. Mrs. Hall was distressed because her husband was in jail and she had attempted to pledge with McCanless a diamond ring to take up the check and satisfy the claim of the prosecutor in the criminal proceeding. This offer was declined.

Hall lost in his gambling transactions at the gambling house of McCanless, in addition to the check, more than $300; his funds were derived in this way,—he owned a restaurant in Elizabethton, and the automobile, and he negotiated a sale of his restaurant to the maker of the check and received in payment about $350 in cash and the check in question, or the original. He went from Elizabethton to Johnson City and there with another by the name of Henry visited the gambling house of McCanless, which was known as the Colonial Country Club, and there engaged all night in gambling. He lost his cash first, and early in the night procured McCanless to cash a check for $40; his losses continued and in the morning he produced the $200 check to McCanless and he cashed it, when this money was paid out in cash on future losses. The witness says he paid his money out in twenty and twenty-five dollar amounts regularly, in the purchase of poker chips. McCanless operated the house, and when the gamblers called a pot before the winner took it down they "cut the pot," which is sometimes called "milking the widow." That is they took out of the pot a certain per cent of the winnings in chips and delivered it to the house, or McCanless.

Too much publicity was shed upon this affair for it to pass unnoticed. This suit was filed by the wife. under her right given her by statute in gambling transactions. to replevy the pledged automobile; and to declare void the gambler's consideration which was in the nature of the pledge contract. The wife also sued to recover the cash lost upon the night when the gambling took place.

The chancellor heard the cause and found the said pledge contract void and decreed a right of possession to the car in the wife. The gambler has appealed.

It is insisted, first, that the contract was a valid one, because the check was negotiated to McCanless for value, and that he did not gamble or know that the proceeds of the check were used in the payment of gambling wagers; and, second, that the pledge contract was a new contract supported by an entirely different consideration.

On direct examination of McCanless he detailed his conversation with the witness Henry who presented the check for Hall. McCanless said he did not know Hall; he inquired as to the solvency of the drawer of the check and, being satisfied, paid the $200 for the check. Then Hall paid him $40 of the check he had cashed in the forepart of the night. It is to be inferred from his testimony that he was not put upon notice of what the sums were used for, or for what purpose the check was being cashed. Upon cross examination he was asked about his knowledge of the disposition of the funds. He declined to answer any of the questions because his answers might tend to incriminate him. He admitted that he had been fined twice and forfeited his bond once under charges of running a gambling house. He also admitted he had been enjoined by the state authorities from operating a gambling house, and there was an injunction pending against him. He called it a "temporary injunction."

The go-between, Henry, was a witness for the complainant; he testified that Hall was at McCanless' gambling house all night playing; that McCanless operated the house, and received his per cent of the jackpot, or winnings. He states McCanless cashed the check and bought poker chips and played in the game.

Counsel for McCanless say that Henry was a friend of McCanless, but later they fell out and his testimony is not worthy of belief. We are not impressed with this statement; we think it fortunate for the public that men of this character fall out and then become willing to testify against one another. We think the testimony ought to be given credit until impeached by a stronger circumstance than the fact that they had fallen out. McCanless did not deny the testimony of the witness Henry. If it had been false he could have denied it without fear of having incriminated himself.

There are other witnesses who testified to the gambling transaction, and while Henry clearly established the gambling transaction, others did likewise, if not so fully. We do not feel called upon to review the evidence further.

Was the pledge contract a new contract placed upon an independent consideration? "A new contract may be executed which, if wholly unconnected with the original transaction, and founded on a new consideration, will be valid, although in relation to another

aspect of which there may have been prior unlawful transactions between the parties; but if such contract, though it purports to be new, grows immediately out of, or be connected with, the illegal transaction, it will be utterly void." Bates v. Watson, 1 Sneed, 376.

Counsel's argument follows:

"It is supported by a consideration that had nothing to do with the check. At the time the contract was executed the defendant was not trying to enforce any right against the Halls. His right of action was against Dickson the maker of the check. When the contract involved in this case was executed, the check was destroyed, that is, Mr. McCanless gave up his right of action against Mr. Dickson, which was the consideration for the contract so far as the $200 was concerned."

So the consideration surrendered by McCanless was "his right of action against Mr. Dickson." We will examine this surrendered right of action. Suppose that McCanless had sued Dickson upon the check and Dickson had defended upon the ground that the check was without consideration for the reason it was given for a gambling debt. When the fact was established, McCanless would have been repelled from court. His cause of action against Dickson was worth nothing. When he surrendered it he lost nothing, and a right valued as nothing can not serve as a consideration for a contract.

There are two facts standing out in this record, the first that McCanless only procured the check in payment of money used in gambling, and he was the prime beneficiary in the gambling transaction; and, second, that McCanless is attempting to collect this check, or money advanced upon it, by the substitution of a subsequent contract for the debt. It is impossible for him to purge this contract of a gambling consideration. He has no standing in this court.

The judgment of the lower court is affirmed.

Snodgrass and Thompson, JJ., concur.